

21st Floor
1251 Avenue of the Americas
New York, NY  10020-1104

**Robert Balin**
212.489.8230 tel
212.489.8340 fax
RobBalin@dwt.com

August 12, 2024

<u>**VIA ECF**</u>

Hon. Naomi Reice Buchwald
United States District Judge
Daniel Patrick Moynihan United States Courthouse
Courtroom 21A
500 Pearl Street
New York, NY 10007-1312

     **Re:**    *Savage v. NYP Holdings, Inc., et al.*, No. 1:24-cv-03278-NRB

Dear Judge Buchwald:

     This firm represents Defendants NYP Holdings, Inc., Miranda Devine, and Jon Levine (together, "Defendants") in the above-referenced libel suit.  We write to respectfully request a pre-motion conference regarding Defendants' anticipated motion to dismiss the complaint ("Complaint" or "Compl.") pursuant to Fed. R. Civ. P. 12(b)(6).  As set forth below, the libel claim asserted by Plaintiff Robert Savage ("Savage") fails as a matter of law because the challenged news reporting, which relates to Hunter Biden, the son of President Biden, is not reasonably susceptible to any defamatory meaning with respect to Savage.[1]

     **Plaintiff's Defamation Claim**.  As alleged in the Complaint, Savage is a former Secret Service agent.  Compl. ¶ 2.  Prior to his retirement in April 2018, he was in charge of the Secret Service's Los Angeles Field Office.  *Id.* ¶¶ 2, 14.  Defendant NYP Holdings, Inc. is the publisher of the *New York Post* (the "Post"), and Devine and Levine are Post reporters.  *Id.* ¶¶ 6-8.  Savage's libel claim arises from two different publications:  a series of Tweets posted by Devine on September 1, 2023, *id.* Ex. A (the "Tweets"),[2] and a news article written by Devine and Levine, which was published by the Post on September 2, 2023, *id.* Ex. B (the "Post Article").

     The Tweets report on documents that were found on a laptop abandoned by Hunter in a Delaware repair shop.  Compl. ¶ 18.  Those documents describe a May 2018 incident in which Hunter, while "on a bender," in a hotel room, attempted to pay a prostitute using "a card linked to his dad's account."  Tweets.  The Tweets further report that Savage, a "freshly retired Secret Service agent," was quickly dispatched to investigate the suspicious withdrawals.  *Id.*  This reporting was attributed to a series of text messages, apparently exchanged between Hunter and

---

[1] The undersigned counsel also represents the defendants in a related case before this Court, in which Savage claims he was defamed by an article published by the news website DailyMail.com.  *See Savage v. Assoc. Newspapers Ltd., et al.*, No. 1:24-cv-03280-NRB.  A letter requesting a pre-motion conference also is being filed in that case.

[2] Exhibit A to the Complaint is an incomplete printout of the Tweets, with certain language obscured by the words "see more."  Citations herein to the "Tweets" refer to the complete version, which is available online at https://x.com/mirandadevine/status/1697811243413786939 (last visited Aug. 12, 2024).

Anchorage
Bellevue
Los Angeles

New York
Portland
San Francisco

Seattle
Shanghai
Washington, D.C.

www.dwt.com

August 7, 2024
Page 2

Savage, which were stored on Hunter's laptop (the "Text Messages"). *Id.* The Tweets also include a screenshot of the Text Messages.[3] *Id.* As reflected in the Tweets, the Text Messages quickly escalate from Savage politely asking for Hunter's cooperation ("Come on H this is linked to Celtic's account. DC is calling me every 10. Let me up or come down"),[4] to forcefully demanding entry to Hunter's hotel room ("We're at your door. Open it."). *Id.*

The Post Article reports on an unrelated civil lawsuit in which Savage is alleged to have accepted bribes from a reality television star. Compl. Ex. B. Savage does not challenge that reporting. Rather, the Complaint takes issue with the Article's statements that Savage "once reportedly had ties to Hunter Biden," and that "[t]ext messages labeled as being from [Savage] were reportedly found on the first son's abandoned laptop." Compl. ¶ 29. A photo caption adds that Savage "once provided critical assistance to Hunter Biden []." Compl. Ex. B.

The Complaint alleges that the Tweets and the Post Article "directly accuse Mr. Savage of abusing his position, engaging in illegal misconduct, [and] covering up [Hunter's] illicit activities." Compl. ¶ 41. No reasonable reader could agree with that strained reading.

**Argument**.[5] "Libel plaintiffs must identify a plausible defamatory meaning of the challenged statement or publication." *Van Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 90 (2d Cir. 2003) (citation and internal quotation marks omitted).[6] A statement is defamatory only "if it tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community." *Golub v. Enquirer/Star Grp., Inc.*, 89 N.Y.2d 1074, 1076 (1997) (citation omitted). Whether a challenged statement is reasonably susceptible to defamatory meaning is a question of law. *Van Buskirk*, 325 F.3d at

---

[3] The Complaint alleges that the Text Messages were "fabricated" by an unidentified party, and that the reported incident with Hunter never occurred. Compl. ¶¶ 1, 33. Savage's denial was reported in the Post Article, which stated: "Savage has denied having any involvement with Hunter, and the Secret Service say that they were not providing any protections for the Bidens at the time." Ex. A. If the case proceeds, Defendants will dispute that the Text Messages were fabricated, but that is irrelevant at this stage: even assuming, *arguendo*, that the challenged statements are false, they are not reasonably susceptible to any defamatory meaning as to Savage, and therefore are not actionable.

[4] As reported by the Tweets, "'Celtic' was Joe Biden's Secret Service code name."

[5] The law of New York (where Defendants Devine and Levine reside, and where Defendant NYP Holdings, Inc. is headquartered, Compl. ¶¶ 6-8), and the law of California (where Plaintiff resides, *id.* ¶ 5) are in accord with respect to all issues raised on the anticipated dismissal motion. "In the absence of substantive difference . . . a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it." *Int'l Bus. Mach. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004).

[6] *See also Cochran v. NYP Holdings, Inc.*, 210 F.3d 1036, 1038 (9th Cir. 2000) (per curiam) (affirming dismissal of defamation claim where plaintiff failed to plead that the challenged statement was fairly susceptible of defamatory meaning).

August 7, 2024
Page 3

90.[7]  And "court[s] should not render statements actionable by giving them a strained or artificial construction."  *Biro v. Condé Nast*, 883 F. Supp. 2d 441, 457 (S.D.N.Y. 2012) (granting motion to dismiss) (citation and internal quotation marks omitted).  Moreover, where (as here) a libel plaintiff alleges that some defamatory meaning is *implied* from the challenged statements, he must make "a ***rigorous showing*** that the language of the communication as a whole can be reasonably read both to impart a defamatory inference and to affirmatively suggest that the author intended or endorsed that inference."  *Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 37-38 (1st Dep't 2014) (emphasis added) (affirming pre-answer dismissal).[8]

Certainly there is no express language in the Tweets that "directly accuse[s]" Savage of any "misconduct," or of "covering up" Hunter's activities.  Compl. ¶ 41.  Nor are the Tweets capable of supporting that "strained" implication.  *Biro*, 883 F. Supp. 2d at 457.  Quite the opposite, the Tweets portray Savage as a symbol of law and order, working at the direction of bosses in "DC" to stop the unauthorized withdrawals from Joe Biden's bank account.  Moreover, nothing in the Complaint comes close to making the "rigorous showing" that the defamatory implication alleged by Savage was affirmatively intended or endorsed by Defendants.  *Stepanov*, 120 A.D.3d at 37.  Instead, Savage "adds an entirely new and independent thought that finds no support in the article."  *Tracy v. Newsday*, 5 N.Y.2d 134, 137 (1959) (affirming pre-answer dismissal).

As for the Post Article, the only explicit statements it makes about Savage are that he "once reportedly had ties to Hunter Biden," that "[t]ext messages labeled as being from" Savage were found on Hunter's laptop, and that Savage "once provided critical assistance" to Hunter.  Compl. Ex. B.  No defamatory meaning can reasonably be inferred here, either:  the Secret Service is *supposed* to be known to close relatives of the Vice President, and no reasonable reader could think that Savage acted improperly simply because his contact information was found on Hunter's computer, or that Savage once rendered assistance.  The Complaint fails to plead any facts that plausibly support the defamatory implications that Savage reads into the Article, much less make the required "***rigorous showing***" that those defamatory inferences were affirmatively intended by Defendants.  *Stepanov*, 120 A.D.3d at 37 (emphasis added).

Defendants respectfully request that the Court schedule a pre-motion conference. In the event that the Court chooses to forego a conference, the parties have conferred and agree on the following briefing schedule:  Defendants shall file their opening brief by September 25, 2024, Plaintiff shall file his opposition by November 7, 2024, and Defendants shall file their reply by December 12, 2024.

Respectfully submitted,
  */s/ Robert D. Balin*

---

[7] *See also Cochran*, 210 F.3d at 1038.

[8] *See also Thomas v. L.A. Times Commc'ns LLC*, 45 F. App'x 801, 802 (9th Cir. 2002) (dismissing defamation by implication claim where plaintiff failed to plead that the challenged article gave rise to a defamatory implication or that the author intended to convey that defamatory implication).