666 Old Country Road
Suite 700
Garden City, NY 11530

Admitted in New York and Massachusetts



Office: 516-683-0001
Cell: 516-459-4068
Fax: 516-228-0383
mark@goidell.com
www.goidell.com

August 14, 2024

**Via ECF**
Hon. Naomi Reice Buchwald
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 21A
New York, New York 10007

Re:     *Savage v. NYP Holdings, Inc., et al.*
        Case No. 1:24-cv-03278-NRB

Your Honor,

This letter is submitted by Plaintiff in response to Defendants' request for a pre-motion conference in the above-referenced matter. Plaintiff has no objection to either a pre-motion conference or to foregoing a pre-motion conference in favor of the submission of motion papers in accordance with the schedule agreed upon by the parties. Plaintiff will nevertheless briefly address the contentions set forth in Defendants' letter.

*Facts*

Mr. Savage is a highly-decorated and long-time former Secret Service Agent who was in charge of the Los Angeles Field Office until November 2017. Complaint ¶¶ 12-14. He retired from the Secret Service in April 2018. *Id.* ¶ 12. Defendant NYP Holdings, Inc. publishes the daily newspaper, the *New York Post* (the "Post"), and defendants Miranda Devine ("Devine") and John Levine are Post reporters. *Id.* ¶¶ 6-8.

In a series of Tweets posted on Devine's Twitter account on September 1, 2023 (the "Tweets"), Devine revived earlier false reports that Mr. Savage abused his former position as a Secret Service agent during the night of May 24, 2018 by intervening on behalf of Joe Biden to stop his son, Hunter Biden, from a night of debauchery. Specifically, the Tweets falsely alleged that Mr. Savage exchanged text messages with Hunter Biden, demanding that Hunter Biden leave his hotel room and telling him that 'DC is calling me every 10' and that he was working on 'Celtic's account,' which is the Secret Service codename for Joe Biden when he was Vice President." *Id.* ¶ 26 and Exhibit A to the Complaint. On September 2, 2023, the Post published an article appearing in its newspaper and website which falsely alleged that Mr. Savage's "name appeared on Hunter Biden laptop," that Mr. Savage "had ties to Hunter Biden," and that "text messages labeled as being from Robert Savage III were reportedly found on the first son's abandoned laptop." (the "Article"). *Id.* ¶¶ 27, 29. Defendants had previously and falsely reported in June 2021 that the text messages between Mr. Savage and Hunter Biden, which were a fabrication, were found on the now notorious laptop belonging to Hunter Biden. *Id.* ¶¶ 22-23.

The 2021 article was only one of countless and widespread false reports that the text messages attributed to Mr. Savage were found on Hunter Biden's laptop, and which identified Mr. Savage as a Secret Service agent formerly in charge of the Los Angeles Field Office. *Id.* ¶ 20, 22-23. In fact, those text messages were fabricated, the attribution of the text messages to Mr. Savage was fabricated, and the fabrications were readily apparent even upon a cursory review. *Id.* ¶¶ 24-25. In fact, Mr. Savage had no interactions with Hunter Biden and did not text with Hunter Biden. *Id.* ¶¶ 24, 31. Defendants were actually aware of the falsity of the allegations regarding the text messages and that Mr. Savage had never interacted with Hunter Biden, or defendants recklessly disregard the truth. *Id.* ¶¶ 24, 31.

The Tweets and the Article have caused Mr. Savage to suffer both general and special damages, including but not limited to lost business opportunities for his private security business. *Id.* ¶ 44.

### *The Tweets and Article Are Defamatory*

Defendants contend that the Tweets and the Article are not susceptible of a defamatory meaning and intend to move to dismiss the Complaint on this sole basis. Defendants are mistaken.

It is fundamental that statements of fact are actionable only if they are capable of a defamatory meaning. "Whether particular words are defamatory presents a legal question to be resolved by the court in the first instance. The words must be construed in the context of the entire statement or publication as a whole, tested against the understanding of the average reader, and if not reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made so by a strained or artificial construction." *Aronson v. Wiersma*, 65 N.Y.2d 592, 593-94 (1985).[1] A statement is defamatory if it tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of the plaintiff in the minds of a substantial number of the community. *Golub v Enquirer/Star Group, Inc.*, 89 N.Y.2d 1074, 1076 (1997). "Courts should not strain to interpret such writings in their mildest and most inoffensive sense to hold them nonlibelous." *Loanstreet, Inc. v. Troia*, 2023 WL 5836237, at *11 (S.D.N.Y. Sept. 8, 2023), 1:21-cv-06166-NRB, Dkt. 74 (quotation marks omitted).

The Tweets and Article taken as a whole are readily susceptible of a defamatory meaning. At a minimum, the sting of the publications is that (i) Mr. Savage abused his authority as a retired Secret Service agent to extract Hunter Biden from difficulty, (ii) Mr. Savage provided unauthorized protection to Hunter Biden, (iii) Mr. Savage unethically attempted to cover up the personal affairs of the son of Joe Biden by improperly intervening in an official capacity, and (iv) Mr. Savage surreptitiously undertook an unauthorized protective assignment

---

[1] It is unclear whether California, New York or the law of another jurisdiction will apply. Plaintiff is a California resident. Upon information and belief, Defendant Associated Newspapers Ltd. is a British company headquartered in London. Defendant Mail Media, Inc. is registered in the State of Delaware and maintains its headquarters in New York. Upon information and belief, the Daily Mail is published from the United Kingdon with a world-wide reach across the internet. For purposes of this letter only, Plaintiff assumes that New York law governs.

following his retirement. Contrary to defendants' contention, the defamatory meaning of the Tweets and Article as they relate to Mr. Savage is not strained but is instead readily understood.

Under both New York and California law, an accusation of unethical conduct or dishonesty in the performance of one's professional responsibilities is defamatory per se. *Thoubboron v. Convery*, 306 A.D.2d 521, 522 (2d Dep't 2003) (press release accusing plaintiff of using an aircraft owned by the sheriff's department to take personal trips at the taxpayers' expense was defamatory); *Resolute Forest Products, Inc. v. Greenpeace International*, 2023 WL 3568077, at *9 (N.D. Cal. April 21, 2023) ("Courts have viewed false statements … tending directly to injure a plaintiff in respect to his or her profession by imputing dishonesty or questionable professional conduct [to be] defamatory per se.") (quotation marks omitted) (alteration in the original).

Courts in New York and California have held that statements published by a defendant which disparage a plaintiff in the performance of his official governmental duties are defamatory per se. *Scacchetti v. Gannett Co., Inc.*, 90 A.D.2d 985, 985-986 (4th Dep't 1982) (article accusing a police officer of "spew[ing] obscenities about the judge who sentenced his brother to federal prison ... tend[ed] to injure him in his profession as a law enforcement officer."); *Scott v. Cooper*, 215 A.D.2d 368, 368-369 (2d Dep't 1995) (statements accusing police chief of, among other things, "misconduct regarding his official duties" is reasonably susceptible of defamatory meaning because "it tends to disparage [plaintiff] in his profession."); (*Balla v. Hall*, 59 Cal. App. 5th 652, 687 (2021), *review denied* (Apr. 14, 2021) (publication accusing plaintiffs of engaging in improper actions while performing official and professional duties was defamatory per se).

Defendants also address defamation by implication, arguing that plaintiff has failed to make "a rigorous showing" that a defamatory meaning can be implied by the Tweets and Article. They express and imply the improper professional conduct set forth above. Libel by implication can be per se defamatory. *La Liberte v. Reid*, 966 F.3d 79, 94 (2d Cir. 2020) (applying California law.

The Tweets and Article also constitute libel by extrinsic fact (libel *per quod*) under both New York and California law. Here, the extrinsic fact is the previous false attribution of the text messages to Mr. Savage. *Hinsdale v Orange County Publications, Inc.*, 17 N.Y.2d 284, 287-288 (1966) (publication of an engagement announcement between two persons widely known to be already married was libelous per se without necessity of special damages). Here, readers of the Tweets and Article were well aware of the widely reported publications of the fabricated text messages. Even if special damages are required (*La Liberte, supra*.), plaintiff has adequately set forth the lost business opportunities arising from the Tweets and Article. (Complaint, ¶ 44).

* * *

Finally, in the event that the Court schedules a pre-motion conference, it is respectfully requested that the Court conduct the conference via remote means.

Thank you for your consideration of this matter.

Very truly yours,

*Mark E. Goidell*

Mark E. Goidell

cc:    All counsel (Via ECF)