UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

LORENZO ROBERT SAVAGE III,

                    Plaintiff,

        - against -

NYP HOLDINGS, INC. d/b/a NEW YORK
POST, MIRANDA DEVINE, JONATHAN
LEVINE,

               Defendants.

---------------------------------------------------------x

:
:
:
:
:
:
:
:
:
:
:
:
:
:

1:24-cv-03278-NRB

**ORAL ARGUMENT REQUESTED**

 

**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY DEFENDANTS NYP
HOLDINGS, INC., MIRANDA DEVINE, AND JONATHAN LEVINE
<u>TO DISMISS THE COMPLAINT</u>**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ................................................................................... 4

    A.    The Parties ................................................................................ 4

    B.    The Tweets ................................................................................ 4

    C.    The Article ................................................................................ 6

    D.    This Lawsuit .............................................................................. 7

ARGUMENT ......................................................................................................... 8

I.     THE COURT SHOULD APPLY NEW YORK LAW ...................................... 9

II.    THE CHALLENGED PUBLICATIONS ARE NOT REASONABLY
SUSCEPTIBLE TO ANY DEFAMATORY MEANING ............................... 10

    A.    The Tweets Are Not Susceptible To Any Defamatory Meaning As To Savage .. 12

        1.    The Tweets Do Not Explicitly Defame Savage. ...................................... 12

        2.    The Tweets Do Not Implicitly Defame Savage. ...................................... 13

    B.    The Article Is Not Susceptible To Any Defamatory Meaning As To Savage ...... 16

        1.    The Challenged Statements in the Article Do Not Explicitly Defame
Savage. ..................................................................................... 16

        2.    The Challenged Statements in the Article Do Not Implicitly Defame
Savage. ..................................................................................... 17

III.   THE COMPLAINT DOES NOT PLEAD LIBEL PER QUOD ..................................... 18

CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................8

*Bareby v. Union Mut. Fire Ins. Co.*,
    22-cv-6034 (JGK), 2023 WL 1818674 (S.D.N.Y. Feb. 8, 2023) .............................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................8, 15

*Biro v. Condé Nast*,
    883 F. Supp. 2d 441 (S.D.N.Y. 2012)........................................................ *passim*

*Booking v. Gen. Star Mgmt. Co.*,
    254 F.3d 414 (2d Cir. 2001)........................................................................9

*Celle v. Filipino Reporter Enters., Inc.*,
    209 F.3d 163 (2d Cir. 2000).......................................................................11

*Chau v. Lewis*,
    771 F.3d 118 (2d Cir. 2014).......................................................................13

*Dombrowski v. Pfister*,
    380 U.S. 479 (1965)..................................................................................8

*Doron Precision Sys., Inc. v. FAAC, Inc.*,
    423 F. Supp. 2d 173 (S.D.N.Y. 2006).............................................................4

*Dorsey v. National Enquirer, Inc.*,
    973 F.2d 1431 (9th Cir. 1992) .....................................................................9

*Fairstein v. Netflix, Inc.*,
    553 F. Supp. 3d 48 (S.D.N.Y. 2021)..............................................................18

*Gallagher v. Philipps*,
    563 F. Supp. 3d 1048 (S.C. Cal. 2021) ...........................................................17

*Goolden v. Wardak*,
    No. 19-CV-6257(JPO), 2020 WL 4271695 (S.D.N.Y. July 23, 2020)....................10

*Idema v. Wager*,
    29 F. App'x 676 (2d Cir. 2002) ...................................................................12

*Int'l Bus. Mach. Corp. v. Liberty Mut. Ins. Co.*,
  363 F.3d 137 (2d Cir. 2004)..................................................................................2, 9

*Kahl v. Bureau of Nat'l Affairs, Inc.*,
  856 F.3d 106 (D.C. Cir. 2017) ....................................................................................9

*Kavanagh v. Zwilling*,
  578 F. App'x 24 (2d Cir. 2014) ...........................................................................14, 19

*Kinsey v. N.Y. Times Co.*,
  991 F.3d 171 (2d Cir. 2021)......................................................................................17

*Kiryas Joel All. v. Vill. of Kiryas Joel*,
  No. 11 Civ. 3982(JSR), 2011 WL 5995075 (S.D.N.Y. Nov. 29, 2011),
  *aff'd*, 495 F. App'x 183 (2d Cir. 2012) ....................................................................19

*Krepps v. Reiner*,
  588 F.Supp.2d 471 (S.D.N.Y. 2008)..........................................................................11

*Mahoney v. Meta Platforms, Inc.*,
  710 F. Supp. 3d 771 (N.D. Cal. 2024) ..................................................................2, 10

*Marom v. Pierot*,
  18-Civ. 12094 (VB), 2020 WL 6572509 (S.D.N.Y. Aug. 30, 2020)........................16

*Meeropol v. Nizer*,
  381 F. Supp. 29 (S.D.N.Y. 1974),
  *aff'd*, 560 F.2d 1061 (2d Cir. 1977) ...........................................................................9

*N.Y. Times v. Sullivan*,
  376 U.S. 254 (1964)......................................................................................................8

*Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*,
  85 F. Supp. 2d 282 (Buchwald, J.) (S.D.N.Y. 2000),
  *aff'd*, 2 F. App'x 109 (2d Cir. 2001) ........................................................................20

*Psalia v. Girardi*,
  No. 2:23-cv-07120-MWF-SK, Dkt. 134 (C.D. Cal. Nov. 13, 2024) ..........................5

*Satanic Temple, Inc. v. Newsweek Mag. LLC*,
  661 F. Supp. 3d 1569 (S.D.N.Y. Mar. 8, 2023).................................................13, 16

*Seljak v. Pervine Foods, LLC*,
  No. 21 Civ. 9561 (NRB),
  2023 WL 2354976 (Buchwald, J.) (S.D.N.Y. Mar. 3, 2023)......................................20

*Seymour v. Lakeville J. Co.*,
  150 F. App'x 103 (2d Cir. 2005) ................................................................................11

*Thomas v. L.A. Times Commc'ns LLC*,
  45 F. App'x 801 (9th Cir. 2002) ............................................................13

*Timoshenko v. Gu*,
  17-cv-2268 (KBF), 2017 WL 10221327 (S.D.N.Y. Aug. 28, 2017) ...........................5

*Trendmood, Inc. v. Rabinowitz*,
  No. 2:20-cv-10877-MCS-RAO,
  2021 WL 5277441 (C.D. Cal. Aug. 31, 2021) ..............................................19

*Util. Metal Rsch., Inc. v. Generac Power Sys., Inc.*,
  179 F. App'x 795 (2d Cir. 2006) ...........................................................11

*Van Buskirk v. N.Y. Times*,
  325 F.3d 87 (2d Cir. 2003) ..................................................2, 6, 10, 11

*Verragio, Ltd. v. AE Jewelers, Inc.*,
  No. 15 Civ. 6500 (CM),
  2017 WL 4125368 (S.D.N.Y. Aug. 23, 2017) ................................................10

*Washington Post Co. v. Keogh*,
  365 F.2d 965 (D.C. Cir. 1966) ..............................................................9

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
  127 F. Supp. 3d 156 (S.D.N.Y. 2015) ........................................................4

*Wexler v. Dorsey & Whitney LLP*,
  815 F. App'x 618 (2d Cir. 2020) ...........................................................11

*Wilson v. New York*, No.
  15-CV-23 (CBA) (VMS),
  2018 WL 1466770 (E.D.N.Y. Mar. 26, 2018) .................................................14

**State Cases**

*Balzaga v. Fox News Network, LLC*,
  173 Cal. App. 4th 1325 (2009) .............................................................10

*Crane v. N.Y. World Tel. Corp.*,
  308 N.Y. 470 (1955) .......................................................................11

*Gambuzza v. Time, Inc.*,
  18 A.D. 2d 351 (1st Dep't 1963) ....................................................14, 15, 18

*Golub v. Enquirer/Star Grp., Inc.*,
  89 N.Y.2d 1074 (1997) ......................................................................3

*Jaszai v. Christie's*,
   279 A.D.2d 186 (1st Dep't 2001) ......................................................................13

*Kimmerle v. N.Y. Evening J.*,
   262 N.Y. 99 (1933) .........................................................................................14

*Tracy v. Newsday*,
   5 N.Y.2d 134 (1959) ..............................................................................14, 15, 16

**State Statutes**

Cal Civ. Code 47(d) ...........................................................................................17

N.Y. Civ. Rights Law § 74 .................................................................................17

**Rules**

Fed. R. Civ. P. Rule 12(b)(6) ..................................................................... *passim*

Fed. R. Civ. P. Rule 12(c) ............................................................................4, 10

**Constitutional Provisions**

United States Constitution, First Amendment .................................................8, 9

Defendants NYP Holdings, Inc. d/b/a New York Post, Miranda Devine, and Jonathan Levine (together, the "NYP Defendants") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff Lorenzo Robert Savage III's complaint ("Complaint" or "Compl.") pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

This is one of two related libel cases brought against news media defendants by Plaintiff Lorenzo Robert Savage III, a retired Secret Service agent.[1]  In this case, Savage's defamation claim arises from two publications that he claims falsely connect him to Hunter Biden, the son of President Joe Biden.  But since neither of the challenged publications are reasonably susceptible to any defamatory meaning as to Savage, the Complaint fails as a matter of law.

The first challenged publication is a series of Tweets posted by *New York Post* reporter Miranda Devine on September 1, 2023 (the "Tweets").  The Tweets describe a May 2018 incident in which Hunter (according to documents reportedly found on Hunter Biden's laptop), repeatedly attempted to pay a prostitute using a debit card linked to then-Vice President Joe Biden's bank account.  The Tweets state that Savage, a "freshly retired Secret Service agent," was quickly dispatched to Hunter's Los Angeles hotel to investigate the unauthorized withdrawals (which totaled $25,000).  *Id.*  The Tweets also include a screenshot of text messages reportedly found on Hunter's laptop, in which Savage writes to Hunter that "DC is calling me every 10."  The text messages end with Savage demanding entry to Hunter's hotel room ("We're at your door. Open it.").  The Tweets do ***not*** state, or even imply, that Savage did anything

---

[1] The related case is *Savage v. Assoc. Newspapers Ltd*, No. 1:24-cv-03280.  The defendants there (who also are represented by the undersigned counsel) have filed a separate motion to dismiss the complaint in that action.

wrong.  To the contrary, Savage is portrayed as the personification of law and order, called back into service to stop the illegal conduct of Joe Biden's wayward son.

The second challenged publication is a news article published by the *New York Post* on September 2, 2023 (the "Article").  The Article reports on an unrelated civil lawsuit in which Savage is alleged to have accepted bribes from a reality television star.  Compl. ¶ 27.  Savage does not challenge that reporting.  Rather, the Complaint takes issue with other, innocuous statements in the Article, specifically that Savage "once reportedly had ties to Hunter Biden," and that "[t]ext messages labeled as being from [Savage] were reportedly found on the first son's abandoned laptop."  Compl. ¶ 29.  A photo caption adds that Savage "once provided critical assistance to Hunter Biden []."

Savage alleges implausibly that both of these publications are defamatory per se, because they "directly accuse" him of misconduct, and of covering up Hunter Biden's illegal activities.  Compl. ¶ 41.  No reasonable reader could agree.

*First*, as a threshold matter, the Court should apply New York law to decide this motion.  The NYP Defendants are all citizens of New York.  And while Savage is a citizen of California, the laws of New York and California both require that a libel claim must plausibly plead that a challenged statement is reasonably susceptible of a defamatory meaning.  *See, e.g.*, *Van Buskirk v. N.Y. Times*, 325 F.3d 87, 90 (2d Cir. 2003) (affirming pre-answer dismissal of defamation claim under New York law where complaint failed to plead defamatory meaning); *Mahoney v. Meta Platforms, Inc.*, 710 F. Supp. 3d 771, 780 (N.D. Cal. 2024) (granting motion to dismiss defamation claim under California law for failure to plead defamatory meaning).  Absent any actual conflict, this Court is free to apply New York law.  *Int'l Bus. Mach. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004).

*Second*, neither the Tweets nor the Article is reasonably susceptible to the defamatory meaning Savage alone reads into them.  A statement is defamatory only "if it tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community."  *Golub v. Enquirer/Star Grp., Inc*., 89 N.Y.2d 1074, 1076 (1997) (citation omitted).  Deciding whether a statement is capable of defamatory meaning is a threshold question of law, and on a motion to dismiss, a court may "not render statements actionable by giving them a strained or artificial construction," *Biro v. Condé Nast*, 883 F. Supp. 2d 441, 457 (S.D.N.Y. 2012) (granting motion to dismiss) (citation and internal quotation marks omitted).  Here, the Complaint fails to identify *any* statement in either the Tweets or the Article that explicitly accuses Savage of misconduct or any sort of cover up.  Nor is any such meaning implied.  As stated above, the Tweets portray Savage as *stopping* Hunter Biden's allegedly illegal conduct. And as for the Article, it states nothing more than that Savage—whose official duties involved protecting Joe Biden—"reportedly had ties" to Joe Biden's son, and "once" provided him with assistance.  Savage's strained and artificial constructions of challenged statements are insufficient to withstand dismissal.

*Third*, Savage's pre-motion letter attempts to salvage his defective defamation claim by restyling it as one for "libel by extrinsic fact," also known as libel per quod.  Dkt. 17 at 2.  This alternative theory, which is never mentioned in the Complaint, also fails.  The Complaint does not identify any "extrinsic facts" that add defamatory meaning to the *positive* characterization of Savage's conduct in the Tweets and the Article.  Nor does the Complaint plead special damages with particularity, as required to maintain a claim for libel per quod.

Whether construed as a claim for defamation per se, or libel per quod, the Complaint fails as a matter of law and should be dismissed with prejudice.

## FACTUAL BACKGROUND

### A.    The Parties

Savage is a resident of California.  Prior to his retirement in April 2018, he was in charge of the Secret Service's Los Angeles Field Office.  *Id.* ¶¶ 2, 15.  During the last two years of Joe Biden's term as vice president (2015-16), Savage "oversaw all Secret Service protective, investigative, and protective intelligence operations" conducted by the Secret Service in Los Angeles, Riverside, Santa Ana, and Ventura, California.  *Id.* ¶ 15.  Savage's duties included overseeing security operations for the agency's Vice-Presidential Protective Division.[2]

NYP Holdings, Inc. is headquartered in New York and publishes the *New York Post* (the "Post"), as well as the Post's website, nypost.com.  *Id.* ¶ 6.  Devine and Levine are both Post reporters who live in New York.  *Id.* ¶¶ 7-8.

### B.    The Tweets

On September 1, 2023, Devine published a series of eight posts about Savage on the social media site X (the "Tweets").[3]  Compl. ¶ 26.[4]  The first Tweet included a hyperlink to a

---

[2] *See* https://savageiii.com/lorenzo-robert-savage/ (last visited Nov. 21, 2024).  The biography section of Savage's professional website also prominently features a photograph of himself with then-Vice President Biden.  "A court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination.'"  *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) (granting motion pursuant to Rule 12(c)) (citation omitted); *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 (S.D.N.Y. 2006) (taking judicial notice of statements made on the plaintiff's website and granting dismissal motion under Rule 12(b)(6)).  This Court similarly can take judicial notice of the content on Savage's professional website.

[3] Individual posts on X are limited to 280 characters.  *See* https://developer.x.com/en/docs/counting-characters (last visited on Nov. 21, 2024).

[4] The Tweets are available online at https://x.com/mirandadevine/status/1697811243413786939 (last visited Nov. 21, 2024) (login required).  Plaintiff attached an excerpted version of the Tweets as Exhibit A to his Complaint, but that exhibit includes only partial text from Tweets 2, 4, and 5.  Complete versions of all eight Tweets are provided as **Exhibit 1** to the Declaration of Robert D. Balin ("Balin Decl.").  Complete versions of incomplete exhibits to a complaint are

news article about an unrelated civil lawsuit (the "California Lawsuit") in which Savage is alleged to have accepted bribes during his time in the Secret Service. Balin Decl Ex. 1. Savage does not challenge that reporting.[5] Devine's subsequent Tweets relate to Savage's role in a May 2018 incident involving Hunter Biden, the details of which were reportedly contained in documents found on a laptop reportedly abandoned by Hunter Biden at a Delaware repair shop. Compl. ¶ 18. According to the Tweets, those documents reveal that Hunter, while "on a bender" in a Los Angeles hotel room, repeatedly attempted to pay $8,000 to a prostitute using "a card linked to his dad's account." *Id.* Ex. A; Balin Decl. Ex. 1. The Tweets continued: "Problem is, while he slept, the transactions he thought had failed have gone through, one after the other, until $25,000 was drained from the account." *Id.* According to text messages found on Hunter's laptop, Savage, a "freshly retired Secret Service agent" whose "photograph, phone number and USSS email address" were in Hunter's contacts, was quickly dispatched to investigate the suspicious withdrawals from "Celtic's" account.[6] *Id.* The Tweets include a screenshot of the text messages reportedly exchanged between Savage and Hunter Biden:

---

properly considered on a motion to dismiss as incorporated by reference. *See, e.g.*, *Timoshenko v. Gu*, 17-cv-2268 (KBF), 2017 WL 10221327, at *4 n.3 (S.D.N.Y. Aug. 28, 2017); *Bareby v. Union Mut. Fire Ins. Co.*, 22-cv-6034 (JGK), 2023 WL 1818674, at *2 (S.D.N.Y. Feb. 8, 2023) (on Rule 12(b)(6) motion, courts can consider document that is incorporated by reference into the complaint).

[5] The claims against Savage in the California Lawsuit were recently dismissed with prejudice. *Psalia v. Girardi*, No. 2:23-cv-07120-MWF-SK, Dkt. 134 (C.D. Cal. Nov. 13, 2024).

[6] As reported by the Tweets, "'Celtic' was Joe Biden's Secret Service code name." Balin Ex. 1.



Balin Decl. Ex. 1.[7]

## C. The Article

On September 2, 2023, the Post published an article written by Devine and Levine titled

"Secret Service agent whose name appeared on Hunter Biden laptop bribed by Real Housewife:

suit" (the "Article"). Compl. ¶ 27.[8]  The primary focus of the Article is the California Lawsuit,

---

[7] As alleged in the Complaint, the Post published an earlier article in June 2021, which also reported on this incident.  Compl. ¶ 23.  Shortly thereafter, Plaintiff's counsel sent a letter to the Post, threatening to file a lawsuit.  *Id.* ¶ 24.  But Savage did not file a lawsuit concerning the June 2021 article, and the statute of limitations has now expired.  *See Van Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 89 (2d Cir. 2003) ("The statute of limitations for libel in New York is one year.").

[8] The Article is available online at https://nypost.com/2023/09/02/secret-service-agent-who-once-helped-hunter-biden-bribed-by-real-housewife-suit/ (last visited Nov. 21, 2024).  A version of the Article is attached as Exhibit B to the Complaint, but the formatting of that exhibit is not optimized for printing. For the Court's convenience, a more printer-friendly version is attached as Exhibit 2 to the Balin Declaration.

but it also provides additional context regarding Savage, stating that he "once reportedly had ties to Hunter Biden."  *Id.* ¶ 29; Balin Decl. Ex. 2.  A photo caption adds that Savage "once provided critical assistance to Hunter Biden."  Balin Decl. Ex. 2.  The Article includes only two additional statements regarding Savage and Hunter Biden:

> Text messages labeled as being from Robert Savage III were reportedly found on the first son's abandoned laptop.

> Savage's lawyer has insisted to The Post that "my client has never met or communicated with Hunter Biden."

Balin Decl. Ex. 2.

### D.    This Lawsuit

Plaintiff filed this lawsuit on April 30, 2024.  Dkt. 1.  The Complaint asserts one cause of action against the NYP Defendants for defamation per se.  Savage alleges that the Tweets and the Article (together, the "Challenged Publications") are defamatory because they "directly accuse Mr. Savage of abusing his position, engaging in illegal misconduct, covering up the purported illicit activities of Hunter Biden, unfitness to perform the duties and responsibilities of his profession, and the absence of integrity in the discharge of his duties."  *Id.* ¶ 41.  The Complaint further alleges that Savage has "no connection to Hunter Biden," *id.* ¶ 36, and that the text messages reportedly exchanged between Savage and Hunter Biden were "fabricated" by some unidentified party, *id.* ¶ 1.[9]

On August 12, 2024, Defendants filed a letter requesting a pre-motion conference to discuss their anticipated motion to dismiss the Complaint.  Dkt. 14.  Savage filed a responsive

---

[9] If this case proceeds, the NYP Defendants will address Savage's claim that the text messages referenced in the Article were fabricated, but it is irrelevant to this motion to dismiss:  even assuming, *arguendo*, that the statements challenged by Savage are false, they are not reasonably susceptible to any defamatory meaning as to Savage, and therefore is not actionable.

letter on August 14, 2024.  Dkt. 15.  By Order dated September 10, 2024, the Court granted

Savage leave to amend his Complaint if "he can assert additional allegations to cure any alleged

deficiencies raised by defendants' letter []."  Dkt. 16 at 1.  Alternatively, the Court directed that

Defendants "may bring their motion without the necessity of a pre-motion conference."  *Id.*

Savage declined to amend his Complaint.  *See* Dkt. 20.  This motion follows.

## ARGUMENT

To survive dismissal under Fed. R. Civ. P. 12(b)(6), a plaintiff must set forth "a claim to

relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[A]

plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*

at 555 (internal quotation marks and alterations omitted).  Although a court must take "well-

pleaded factual allegations" as true for purposes of a Rule 12(b)(6) motion, mere legal

conclusions "are not entitled to the assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679

(2009).  Where, as here, a plaintiff has "not nudged [his] claims across the line from conceivable

to plausible," the complaint "must be dismissed."  *Twombly*, 550 U.S. at 570.

Moreover, in cases involving the exercise of First Amendment rights, like this one, the

United States Supreme Court has instructed that there is a constitutional imperative to dispose of

meritless claims at the earliest possible stage.  *Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965)

("The chilling effect upon the exercise of First Amendment rights may derive from the fact of the

prosecution, unaffected by the prospects of its success or failure.").  *See also N.Y. Times v.

Sullivan*, 376 U.S. 254, 279 (1964) ("[W]ould-be critics of official conduct may be deterred from

voicing their criticism, even though it is believed to be true and even though it is in fact true, because of doubt whether it can be proved in court or fear of the expense of having to do so.").[10]

Because Savage's Complaint does not come close to satisfying the Rule 12(b)(6) plausibility standard, it should be dismissed immediately, with prejudice.

## I.    THE COURT SHOULD APPLY NEW YORK LAW

As a threshold matter, the Court should decide this motion under New York law.[11]

"Federal courts sitting in diversity look to the choice-of-law rules of the forum state." *IBM Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004).  Under New York's choice-of-law rules, "the first step … is to determine whether there is an 'actual conflict'" between the states' laws.  *Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 419-20 (2d Cir. 2001) (citation omitted).  "In the absence of substantive difference, … a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it."  *Int'l Bus. Mach. Corp.*, 363 F.3d at 143.

Here, there is no actual conflict between the law of this forum (where Defendant NYP Holdings, Inc. is headquartered, and where Defendants Devine and Levine reside, Compl. ¶¶ 6-8), and the law of California (where Plaintiff resides, *id.* ¶ 5).  Both New York and California

---

[10] *See also Dorsey v. National Enquirer, Inc.*, 973 F.2d 1431, 1435 (9th Cir. 1992) ("speedy resolution" is needed at the "earliest possible stage" of cases involving First Amendment rights); *Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966) (recognizing danger that publishers will "become self-censors" out of fear "of being put to the defense of a lawsuit" regardless of "the outcome of the lawsuit itself"); *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017) ("To preserve First Amendment freedoms . . . the Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits.") (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)); *Meeropol v. Nizer*, 381 F. Supp. 29, 32 (S.D.N.Y. 1974) (summary relief "is particularly appropriate at an early stage in cases where claims of libel … are made against publications dealing with matters of public interest and concern"), *aff'd*, 560 F.2d 1061 (2d Cir. 1977).

[11] Plaintiff apparently agrees.  *See* Dkt. 15 (Response to Request for Pre-Motion Conference) at 2 n.1 (conceding for purposes of the pre-motion conference that New York law applies).

require that, to state a cognizable libel claim, a complaint must plausibly plead that a challenged statement is reasonably susceptible to defamatory meaning.  Where a statement is not capable of defamatory meaning, both New York and California law hold that dismissal at the pleading stage is warranted.[12]

Accordingly, the Court should decide this motion under New York law.  *See, e.g.*, *Goolden v. Wardak*, No. 19-CV-6257(JPO), 2020 WL 4271695, at *7 (S.D.N.Y. July 23, 2020) (granting motion to dismiss under New York law where no conflict existed between New York law and that of Plaintiff's domicile, Florida); *Verragio, Ltd. v. AE Jewelers, Inc.*, No. 15 Civ. 6500 (CM), 2017 WL 4125368, at *5-8 (S.D.N.Y. Aug. 23, 2017) (applying New York law to defamation claim where Wisconsin and New York law did not conflict and granting Rule 12(c) motion).

## II.    THE CHALLENGED PUBLICATIONS ARE NOT REASONABLY SUSCEPTIBLE TO ANY DEFAMATORY MEANING

Plaintiff's defamation claim fails as a matter of law, because the Complaint does not plausibly plead that the Challenged Publications are susceptible to any defamatory meaning as to Savage.

"Libel plaintiffs must identify a plausible defamatory meaning of the challenged statement or publication."  *Van Buskirk*, 325 F. 3d at 90 (citation and internal quotation marks omitted).  "The New York Court of Appeals has defined a defamatory statement as one that

---

[12] *See, e.g.*, *Van Buskirk*, 325 F.3d at 90 (affirming dismissal of defamation claim under New York law where complaint failed to plead defamatory meaning); *Mahoney*, 710 F. Supp. 3d at 780 (granting motion to dismiss defamation claim under California law for failure to plead defamatory meaning) (citing *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 443 (9th Cir. 2010)); *Balzaga v. Fox News Network, LLC*, 173 Cal. App. 4th 1325, 1339 (2009) (if no "reasonable viewer could have reasonably understood the statement in the alleged defamatory sense, the matter may be decided as a question of law" under California law).

exposes an individual 'to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or . . . induces an evil opinion of one in the minds of right-thinking persons, and . . . deprives one of . . . confidence and friendly intercourse in society.'"  *Celle v. Filipino Reporter Enters., Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) (quoting *Kimmerle v. N.Y. Evening J.*, 262 N.Y. 99, 102 (1933)).  "In making this judgment, the court is not to read the allegedly libelous statements alone, but must read them 'as the average reader would against the whole apparent scope and intent of the writing.'"  *Van Buskirk*, 325 F.3d at 90 (quoting *Celle*, 209 F.3d at 177).  *See also Seymour v. Lakeville J. Co.*, 150 F. App'x 103, 105 (2d Cir. 2005) ("a court does not construe the challenged statements 'with the close precision expected from lawyers and judges' but rather considers how they would be 'read and understood *by the public to which they are addressed*.'") (quoting *Celle*, 209 F.3d at 177) (emphasis in original).  Moreover, "[c]ourt[s] should not render statements actionable by giving them a strained or artificial construction," *Biro*, 883 F. Supp. 2d at 457 (granting motion to dismiss) (citation and internal quotation marks omitted).  *See also Krepps v. Reiner*, 588 F.Supp.2d 471, 484 (S.D.N.Y. 2008) ("[C]ourts should not strain to interpret statements as defamatory.") (citation omitted).

Determining whether a "defamatory statement is reasonably susceptible to the defamatory meaning imputed to it" is a threshold question of law for the court.  *Van Buskirk*, 325 F.3d at 90 (citation and internal quotation marks omitted).  *See also Crane v. N.Y. World Tel. Corp.*, 308 N.Y. 470, 479-80 (1955) ("[A] court shirks its duty if it creates an issue, when none exists[.]).  Accordingly, the Second Circuit repeatedly has made clear that pre-answer motions to dismiss should be granted if a challenged statement is not reasonably capable of any defamatory meaning.  *See, e.g.*, *id.*; *Wexler v. Dorsey & Whitney LLP*, 815 F. App'x 618 (2d Cir. 2020); *Util.*

*Metal Rsch., Inc. v. Generac Power Sys., Inc.*, 179 F. App'x 795 (2d Cir. 2006).

**A.     The Tweets Are Not Susceptible To Any Defamatory Meaning As To Savage**

1.     The Tweets Do Not Explicitly Defame Savage.

The Complaint alleges that the Tweets "*directly accuse* Mr. Savage of abusing his position, engaging in illegal misconduct, covering up the purported illicit activities of Hunter Biden, unfitness to perform the duties and responsibilities of his profession, and the absence of integrity in the discharge of his duties."  Compl. ¶ 39 (emphasis added).  They clearly do not. Instead, read in context,[13] the Tweets report the following information:  (1) Hunter Biden went on "bender" at a Los Angeles hotel in May 2018; (2) Hunter repeatedly attempted to pay $8,000 to a prostitute, "but none of his debit cards work[ed]," so he used a card "that's linked to his dad's account"; (3) officials in "DC" learned of the withdrawals (which ultimately totaled $25,000) and asked "freshly retired Secret Service agent" Savage to investigate; (4) Savage— whose contact information and photograph were stored on Hunter's laptop—sent Hunter a series of text messages from the hotel lobby, demanding that Hunter either come down or let Savage into Hunter's hotel room; and (5) Savage ultimately appeared at the door to Hunter's hotel room and demanded entry ("We're at your door. Open it").  Balin Decl. Ex. 1.  ***None*** of these assertions explicitly state (or even imply) anything remotely close to the strained construction alleged in the Complaint, *i.e.*, that Savage did something illegal, engaged in a cover up, or abused his position.  In fact, the Tweets say nothing about a "cover up," and state explicitly that Savage was "retired" and an "ex special agent," which means that he could not have been acting

---

[13] In determining whether a challenged statement is capable of defamatory meaning, "the court must read the offending words in the context of the whole article and test them against 'the understanding of the average reader.'"  *Idema v. Wager*, 29 F. App'x 676, 678 (2d Cir. 2002) (quoting *Celle*, 209 F.3d at 177).

in an official capacity, much less abusing any official position.  If anything, the Tweets—which include a screenshot of the Savage-Hunter Biden text messages—show Savage laudably stopping Hunter's illegal conduct.

In short, the Tweets do not explicitly accuse Savage of *anything* inappropriate, much less acts that "rise to the odium necessary to constitute defamatory meaning."  *Chau v. Lewis*, 771 F.3d 118, 128 (2d Cir. 2014).

### 2.    The Tweets Do Not Implicitly Defame Savage.

Savage alleges that both the Tweets and the Article defame him "***directly***."  Compl. ¶ 41. The Complaint contains no allegation of any defamatory inference, innuendo or implication, and it does not purport to state a claim for "defamation by implication" or "defamation by innuendo." Nor could it.  As set forth below, no amount of artful pleading could plausibly suggest that the Challenged Publications implicitly defame Savage.

New York law is clear:  "If a writing is not susceptible to libelous meaning, innuendo cannot make it so."  *Jaszai v. Christie's*, 279 A.D.2d 186, 190 (1st  Dep't 2001) (granting motion to dismiss) (citing *Tracy v. Newsday*, 5 N.Y.2d 134, 136 (1959)).  And "in order to state a claim for a defamatory implication, the 'defamatory implication must be present in the plain and natural meaning of the words used.'"  *Biro*, 883 F. Supp. 2d at 464-65 (quoting *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092-93 (4th Cir. 1993)).  "This is an 'objective' standard, which 'asks whether the plain language of the communication itself suggests that an inference was intended or endorsed.'"  *Satanic Temple, Inc. v. Newsweek Mag. LLC*, 661 F. Supp. 3d 1569, 170 (S.D.N.Y. Mar. 8, 2023) (dismissing defamatory implication claim) (citing *Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 37 (1st Dep't 2014)).[14]  Since the Complaint fails to

---

[14] *See also Thomas v. L.A. Times Commc'ns LLC*, 45 F. App'x 801, 802 (9th Cir. 2002) (dismissing defamation by implication claim under California law where the challenged article

13

plausibly plead any of these elements with respect to the Tweets, it must be dismissed. *See Kavanagh v. Zwilling*, 578 F. App'x 24, 25 (2d Cir. 2014) (affirming dismissal of a defamation by implication claim where the complaint, *inter alia*, failed to plausibly allege that the defendants intended or endorsed the defamatory inference) (summary order); *Wilson v. New York*, No. 15-CV-23 (CBA) (VMS), 2018 WL 1466770, at *5 (E.D.N.Y. Mar. 26, 2018) (dismissing a defamation by implication claim where the statement "[o]n its face, [suggested] neither a positive nor negative inference" and "instead [was] equally suggestive of both").

 *First*, no defamatory implication is "present in the plain and natural meaning of the words used" in the Tweets. *Id.* The Tweets allege misconduct by Hunter Biden. To the extent they imply anything about Savage, it is that he intervened to stop Hunter's unauthorized withdrawals from Joe Biden's bank account. There is no suggestion that Savage did anything improper whatsoever, much less that he engaged in conduct that could expose him to "public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace." *Kimmerle*, 262 N.Y. at 102. Moreover, as noted above, the Tweets explicitly state that Savage was "retired" from the Secret Service, so no reasonable reader could be left with the impression that he was abusing his official position; the Tweets make clear that he no longer held one. Since Savage's strained reading "adds an entirely new and independent thought that finds no support in the article." *Tracy*, 5 N.Y.2d at 137 (granting motion to dismiss), it does not—as a matter of law—plead a defamation claim.

 A Cold War-era case is instructive. In *Gambuzza v. Time, Inc.*, 18 A.D. 2d 351 (1st Dep't 1963), the plaintiff alleged that he was defamed because his photograph was included in a

---

did not give rise to a defamatory implication and plaintiff could not plead that the author intended to convey a defamatory implication).

magazine article about convicted Russian spy Rudolf Abel, along with a caption stating that the plaintiff was "a radio dealer who sold [the spy] some parts for a wireless receiver, [and] praised the Russian for his electronic know-how." *Id.* at 352.  The plaintiff alleged that this was defamatory, because it suggested he was "an admirer of a person engaged in activities looking toward the overthrow of the American form of government by force and violence" and that the plaintiff "may have knowingly assisted [] Abel in his spying activities." *Id.* at 355.  The court disagreed, finding that the challenged language "can only mean what the plaintiff contends it does by applying a completely unreasonable, remote and illogical meaning to the same." *Id.* at 356 ("To impart such a meaning to this publication would . . do violence to reason and common sense.  The use of innuendo is not permitted to achieve such result.").

To accept Savage's far-fetched construction of the Tweets would similarly "do violence to reason and common sense." *Gambuzza*, 18 A.D. at 356.  The Tweets simply state that Savage was dispatched to investigate Hunter's withdrawals from Joe Biden's bank account and that he "demanded Hunter let him in."  Balin Decl. Ex. 1.  No defamatory meaning is reasonably implied as to Savage. *See also Tracy*, 5 N.Y. 2d at 136 ("The [alleged] innuendo . . . may not enlarge upon the meaning of words so as to convey a meaning that is not expressed.").

*Second*, Savage cannot maintain a defamatory implication claim because he does not (and cannot) plausibly allege that Defendants "intended or endorsed the alleged defamatory inference." *Biro*, 883 F. Supp. 2d at 469.  In fact, the Complaint does not allege that Devine had even heard of Savage before his text messages were found on Hunter Biden's laptop, and it alleges no plausible basis for believing that Devine affirmatively intended to suggest that Savage engaged in a cover up or abused his position. *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[].").

Courts in this District readily dismiss defamation by implication claims at the pleading

stage, even where the challenged language is more open to defamatory interpretation than are the

statements at issue here.  For example, in *Satanic Temple*, 661 F. Supp. 3d at 174, the court

rejected as a matter of law a religious group's claim that *Newsweek* implicitly accused it of

defrauding the public by stating in a news article that the group had "recently made some

significant structural changes, apparently in an effort to appear more like a mainstream church."

*Id.*  As the court held, "[i]t is a long leap to claim that [this statement implies] that Plaintiff was

defrauding the public about its organizational purposes. It is a longer leap to suggest that this

implication was intended and endorsed by the author of the Article." *Id.*

Similarly, in *Marom v. Pierot*, 18-Civ. 12094 (VB)(JCM), 2020 WL 6572509 (S.D.N.Y.

Aug. 30, 2020), the defendant's statement that the plaintiff "attacked my wife" was held to be

nonactionable because it "does not actually accuse Plaintiff of any crime."  *Id.* at *8 (finding that

the plaintiff also failed to "affirmatively suggest that the author intended or endorsed that

inference."  *Id.* at *9 (internal citation and quotation marks omitted).

Savage's strained interpretations of the Tweets are an even "longer leap" than the ones

rejected in these cases.  "Since there is no basis in fact nor tenable position in law to support the

alleged innuendo," the Tweets "may not be regarded as defamatory [] under any fair

construction."  *Tracy*, 5 N.Y.2d at 138.

**B.    The Article Is Not Susceptible To Any Defamatory Meaning As To Savage**

1.    <u>The Challenged Statements in the Article Do Not Explicitly Defame
Savage.</u>

As with the Tweets, none of the challenged statements in the Article come close to

explicitly accusing Savage of "abusing his position, engaging in illegal misconduct, [or] covering

up the purported illicit activities of Hunter Biden." Compl. ¶ 41.[15]  The Article's only statements about Savage and Hunter Biden are: that Savage "once reportedly had ties to Hunter Biden," that "[t]ext message labeled as being from [Savage] were reportedly found on the first son's abandoned laptop," and that Savage "once provided critical assistance to Hunter Biden."  The Complaint fails to identify a single statement in the Article that "directly accuses" Mr. Savage of any wrongdoing.

> 2.   The Challenged Statements in the Article Do Not Implicitly Defame Savage.

None of these statements implicitly defame Savage, either.[16]  The mere fact that Savage, a retired Secret Service agent, "reportedly had ties" to the son of a former vice president cannot plausibly be understood to suggest any defamatory meaning:  a reader would reasonably *expect* that a senior Secret Service official would be known to the vice president's family.  The same is true of the statement in a photo caption that Savage "once provided critical assistance to Hunter Biden."  Balin Decl. Ex. 2.  The Article states nothing negative about the circumstances under which Savage provided assistance to Hunter, and, again, no reasonable reader could take any

---

[15] The other statements in the Article, which describe allegations made against Savage in the California Lawsuit, *do* report that the plaintiff in that lawsuit accuses Savage of abusing his official position (*i.e.*, taking bribes), but that news reporting is not challenged by Savage.  And for good reason.  The Article's reporting on the California Lawsuit is absolutely privileged because they accurately report allegations made in a judicial proceeding.  Under New York law, "[a] civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding []."  N.Y. Civ. Rights Law § 74.  This privilege is absolute and cannot be defeated by allegations of bad faith or malice.  *Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 177 (2d Cir. 2021).  The same is true under California law.  *See, e.g.*, *Gallagher v. Philipps*, 563 F. Supp. 3d 1048, 1082 (S.C. Cal. 2021) ("The fair report privilege confers an absolute privilege on any fair and true report in, or a communication to, a public journal of a judicial proceeding, or anything said in the course thereof.") (internal citation and quotation marks omitted); Cal Civ. Code 47(d) (defining a "privileged publication" to include "a fair and true report" of a judicial proceeding).

[16] As noted above, the Complaint does not even claim that there is any defamatory implication, inference or innuendo contained in either the Tweet or the Article.

defamatory meaning from this statement given that members of the Secret Service would be *expected* to provide assistance to the family members of a high-level protectee.  *See also Gambuzza*, 18 A.D. at 356 (finding no defamatory implication in photo caption stating that the plaintiff sold parts for a wireless receiver to a convicted Russian spy).  To extrapolate from these simple statements that Savage somehow abused his official position, or engaged in a cover up, is beyond anything a reasonable reader would infer.  *See Biro*, 883 F. Supp. 2d at 469 ("These passages are not actionable because the 'levels of attenuation' within the purported implication 'cast doubt on the reasonable inferences' that [plaintiff] argues should be drawn from the statements.") (quoting *Vinas v. Chubb Corp.*, 499 F. Supp. 2d 427, 436 (S.D.N.Y. 2007)).

Moreover, even if the challenged statements in the Article *could* be reasonably read to imply some defamatory meaning as to Savage (and they cannot), the Article (like the Tweets) still could not give rise to a claim for defamation by implication because the Complaint does not "affirmatively suggest that the author[s] intend[ed] or endorse[ed] the inference."  *Biro*, 883 F. Supp. 2d at 464-65.

## III.    THE COMPLAINT DOES NOT PLEAD LIBEL PER QUOD

In Savage's response to Defendants' pre-motion letter, he tries unpersuasively to salvage his claim by recasting it as one for "libel by extrinsic fact (libel per quod)."  Dkt. 15 at 3.  This attempt by Savage to rewrite his claim also should be rejected.

"In a claim of [libel] per quod, no defamatory statement is present on the face of the communication but a defamatory import arises through reference to facts extrinsic to the communication."  *Fairstein v. Netflix, Inc.*, 553 F. Supp. 3d 48, 63 (S.D.N.Y. 2021) (internal citation and quotation marks omitted).  Savage fails to plead libel per quod for at least three independent reasons.

*First*, the Complaint itself does not allege "libel by extrinsic fact" or "libel per quod," and Savage declined to amend his Complaint despite being granted leave by this Court to do so. *See* Dkts. 16, 19. His newly minted claim should be rejected on that basis alone. *See Kiryas Joel All. v. Vill. of Kiryas Joel*, No. 11 Civ. 3982(JSR), 2011 WL 5995075, at *10 n.9 (S.D.N.Y. Nov. 29, 2011) ("plaintiffs cannot use their opposition to the motion to dismiss to raise new claims or arguments."), *aff'd*, 495 F. App'x 183 (2d Cir. 2012).

*Second*, Savage does not identify any extrinsic fact that could plausibly transform the Challenged Publication's laudatory characterizations of Savage's actions into a defamatory ones. In his pre-motion submission, Savage contends that "the extrinsic fact is the previous false attribution of the text messages to Mr. Savage." Dkt. 17 at 3. But the attribution of those text messages to Savage is not *extrinsic* to the Tweets; the Tweets themselves attribute those text messages to Savage, and report their contents fully. Balin Decl. Ex. 1. And as argued above, even if the attribution of the text messages to Savage *were* false, it would still be nonactionable because the reported text message exchange is not susceptible to any defamatory meaning as to Savage.

*Third*, Savage's purported claim for libel per quod independently fails because the Complaint does not plead special damages with particularity. *See Kavanagh v. Zwilling*, 578 F. App'x 24, 25 (2d Cir. 2014) (holding that "failure to plead damages [in support of a libel per quod claim] is a 'fatal defect'" and affirming dismissal) (quoting *Idema*, 120 F. Supp. 2d 361, 368 (S.D.N.Y. 2000)).[17] "[I]t is well settled law in New York that special damages must be

---

[17] The same is true under California law. *See, e.g.*, *Trendmood, Inc. v. Rabinowitz*, No. 2:20-cv-10877-MCS-RAO, 2021 WL 5277441, at *4 (C.D. Cal. Aug. 31, 2021) (dismissing libel per quod claim for failure to plead special damages with requisite particularity (citing Fed. R. Civ. P. 9(g))).

[pleaded] with sufficient particularity to identify *actual losses*." *Id.* (emphasis added) (citation and quotation marks omitted). Plaintiff's vague allegation that he lost unidentified "security contracts and business opportunities," Compl. ¶ 42, falls far short of the required showing. *See id.* ("When the loss of business is claimed, persons who ceased to be customers must also be *named* and the losses *itemized*.") (emphasis added).

Savage's attempt to rewrite his claim as one for libel per quod does not salvage his fatally flawed pleading. Because the Article is not reasonably susceptible to any defamatory meaning as to Savage, the Complaint fails as a matter of law.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.[18]


Dated: November 21, 2024
      New York, New York

                                    DAVIS WRIGHT TREMAINE LLP

                                    By: */s/ Robert D. Balin*
                                    Robert D. Balin
                                    Adam I. Rich
                                    1251 Avenue of the Americas, 21st Floor
                                    New York, NY 10020
                                    Phone:    (212) 489-8230
                                    Email:     robbalin@dwt.com
                                                      adamrich@dwt.com

                                    *Attorneys for Defendants NYP Holdings, Inc.,*
                                    *Miranda Devine, and Jonathan Levine*

---

[18] As this Court has previously held, "[l]eave to amend is appropriately denied where, as here, the plaintiff has already had an opportunity to replead after specific warnings as to a complaint's deficiencies." *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 304 n.27 (Buchwald, J.) (S.D.N.Y. 2000), *aff'd*, 2 F. App'x 109 (2d Cir. 2001). *See also Seljak v. Pervine Foods, LLC*, No. 21 Civ. 9561 (NRB), 2023 WL 2354976, at *16 (Buchwald, J.) (S.D.N.Y. Mar. 3, 2023) (denying leave to amend where, "[n]otwithstanding the benefit of defendant's [pre-motion] letter, plaintiffs did not amend their complaint.").