666 Old Country Road
Suite 700
Garden City, NY 11530

Admitted in New York and Massachusetts

LAW OFFICE OF
MARK E. GOIDELL

Office: 516-683-0001
Cell: 516-459-4068
Fax: 516-228-0383
mark@goidell.com
www.goidell.com

January 3, 2025

**Via ECF and First Class Mail**
Hon. Naomi Reice Buchwald
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 21A
New York, New York 10007

        Re:    *Savage v. NYP Holdings, Inc., et al.*
                 Case No. 1:24-cv-03278-NRB

Your Honor,

      This letter is submitted by plaintiff Lorenzo Robert Savage III pursuant to section 2(C)(1) of Your Honor's Individual Practices to outline the arguments set forth in plaintiff's memorandum of law in opposition to the motion to dismiss. Two courtesy copies of plaintiff's opposition papers are enclosed with the hard copy of this letter.

***Facts Relevant To The Motion To Dismiss***

      Mr. Savage is a highly-decorated and long-time former Secret Service Agent who was in charge of the Los Angeles Field Office until November 2017. Mr. Savage took a voluntary leave of absence in November 2017 to pursue employment as Chief Executive Officer of a private security company, and then officially retired from the Secret Service in April 2018. Following his retirement, Mr. Savage started his own private security company, known as Savage III, Inc.

      Defendants published tweets (the "Tweets") and an article (the "Article") (together, the "publications") in the New York Post print and online editions which falsely reported that plaintiff intervened upon the request of "officials" in Washington, D.C. to surreptitiously extricate Hunter Biden, the son of Joseph Biden, from a night of drug use while patronizing a prostitute, and falsely attributed a series of text messages to plaintiff in furtherance of this secret mission.

      On September 1, 2023, defendant Miranda Devine ("Devine") posted a series of tweets from her Twitter account reviving fabricated, non-existent text messages between plaintiff and Hunter Biden, and portraying them as facts and news. Specifically, Devine first tweeted the false statement that plaintiff was "featured prominently" on "Hunter Biden's laptop." Devine then tweeted about "[t]he scene," which she described as Hunter Biden's "bender" while purchasing the services of a prostitute using a credit card "linked to his dad's account." She tweeted that funds were drained from that "account," and that immediately after, "there's a freshly retired Secret Service agent downstairs demanding that Hunter let him in." Devine falsely identified plaintiff, whose contact information, she falsely alleged, appeared in the infamous Hunter Biden laptop. Devine then displayed a screenshot of the fabricated text exchange between plaintiff and Hunter Biden, with excerpted quotes in another tweet.

      The following day, September 2, 2023, the defendants published the Article. The Article headline reads, "Secret Service agent whose name appeared on Hunter Biden laptop bribed by

Real Housewife: suit." The Article falsely states that plaintiff "had ties to Hunter Biden," and a caption to a photograph falsely states that plaintiff "once provided critical assistance to Hunter Biden." Further, the Article falsely reports, "Text messages labeled as being from [plaintiff] were reportedly found on the first son's abandoned laptop."

Defendants contend that the Tweets and the Article actually depict plaintiff in a favorable light. They argue that in the Tweets, plaintiff is "portrayed as the personification of law and order, called back into service to stop the illegal conduct of Joe Biden's wayward son." (Defendants' Memorandum of Law [ECF 26], pp. 2, 3). The publications, Defendants argue, constitute "innocuous" reports that plaintiff "had ties" to Hunter Biden, and that text exchanges between plaintiff and Hunter Biden, allegedly found on Hunter Biden's laptop, demonstrate that plaintiff "once provided critical assistance to Hunter Biden." (*Id.*).

The Tweets and Article set forth several false allegations. ***First***, the publications falsely report that "officials" in Washington, D.C. asked Savage to investigate Hunter Biden's financial transactions with a prostitute. In fact, at that time Savage was not employed as a Secret Service agent and he retired the preceding month, after being inactive for several months before that. In fact, plaintiff was not requested to intervene or investigate by "officials" or by anyone else. ***Second***, the publications falsely report or imply that plaintiff used his alleged position to end the "binge" in which Hunter Biden was engaged. In fact, Savage was never in contact with Hunter Biden, did not intervene, and did not engage Hunter Biden that night or at any other time. ***Third***, the publications falsely attribute a series of fabricated text messages to plaintiff, in which plaintiff allegedly texted Hunter Biden and "threaten[ed] to break into [his] room, telling him that 'DC is calling me every 10,' and that he was working on 'Celtic's account' – the Secret Service codename for Joe Biden when he was Vice President." In fact, Savage did not engage in any text messages with Hunter Biden then or at any other time, did not receive calls from "DC," and was not working on the "Celtic's account."

Defendants ask the Court to read these publications in a vacuum and ignore their context. Fair-minded readers understood the publications to express or imply that plaintiff acted as a rogue vigilante – that he misused his power and influence as a former high ranking law enforcement officer to obtain favorable and unauthorized treatment for the son of the then former Vice President. The depiction of plaintiff both as a person who misused his position, and separately, as a political partisan, can and did cause substantial harm to plaintiff in his profession as a private security contractor, which requires a reputation of honesty and integrity, the absence of political or other bias, and relative anonymity to attract and conduct business.

*The Article Is Defamatory*

Defendants contend that the publications are not susceptible to a defamatory meaning and move to dismiss on this sole basis, arguing that the Article actually portrays Mr. Savage as a "laudatory" crime-fighter, conveniently ignoring that the conduct falsely attributed to Mr. Savage depicts him as a rogue and partisan vigilante, who misused his influence and position as a former high-ranking law enforcement officer for the benefit of the family of Joseph Biden. The depiction of plaintiff both as a person who misused his position, and separately, as a political partisan, can and did cause substantial harm to plaintiff in his profession as a private security contractor, which requires a reputation of honesty and integrity, the absence of political or other bias, and relative

anonymity to attract and conduct business.

The well-known standards for evaluating whether the publications are susceptible to a defamatory meaning apply. "[T]he court must give the disputed language a fair reading in the context of the publication as a whole." *Armstrong v. Simon & Schuster, Inc.*, 85 N.Y.2d 373, 380 (1995). Challenged statements are not to be read in isolation but must be read as the average reader would against the "whole apparent scope and intent" of the writing. *November v. Time Inc.*, 13 N.Y.2d 175, 178 (1963). "[C]ourts are not to strain to interpret such writings in their mildest and most inoffensive sense to hold them nonlibelous" *LoanStreet, Inc. v. Troia*, 2023 WL 5836237, at *11, No. 21-cv-6166-NRB (S.D.N.Y. Sept. 8, 2023) ("Courts should not strain to interpret such writings in their mildest and most inoffensive sense to hold them nonlibelous"). (quotation marks omitted).

Defendants strain to advocate a narrow and implausible reading of the publications, failing to read them in their context as a whole. Among other things, defendants simply disregard the fabricated text messages and their import. The false attribution of these text messages to plaintiff, by itself, is defamatory. "Where, as here, an act of [ ] impersonation imputes facts to the person impersonated that damage him in his trade or profession, a cause of action for libel per se is adequately pleaded." *Rall v. Hellman*, 284 A.D.2d 113, 113 (1st Dep't 2001) (email falsely attributed to plaintiff that were not reflective of his views).

The fair inference of the publications is that plaintiff was performing unauthorized work and engaged in a cover-up of Hunter Biden's alleged misconduct on behalf of the then former Vice President. There is nothing strained or artificial about these conclusions. In fact, public reporting establishes that the Chairman of the United States Congressional House Oversight Committee, Rep. James Comer, came to similar conclusions in making a recommendation to investigate the Secret Service because of the misconduct falsely attributed to plaintiff.

A false accusation that demonstrates character traits inappropriate or inconsistent with the proper conduct of a plaintiff's business or profession is defamatory per se. "One useful rule is that a writing which **tends** to disparage a person in the way of his office, profession or trade is defamatory per se and does not require proof of special damages." "Words which affect a person in his or her profession by imputing to him or her **any kind** of fraud, dishonesty, misconduct, or unfitness in conducting one's profession may be actionable." *Wassermann v. Haller*, 216 A.D.2d 289, 289 (2d Dep't 1995) (emphasis added). Courts have consistently held that words that tend to injure a party in his or her business or profession are reasonably susceptible of a defamatory meaning. *See*, e.g., *Scott v. Cooper*, 215 A.D.2d 368, 368, 369 (2d Dep't 1995) (accusations that chief of police engaged in, among other things, "misconduct regarding his official duties" and "coverups of criminal activities" "tend[ed] to disparage [plaintiff] in his profession."). Statements published by a defendant which disparage a plaintiff in the performance of his official governmental duties are defamatory per se. *Scacchetti v. Gannett Co., Inc.*, 90 A.D.2d 985, 985-986 (4th Dep't 1982) (article accusing a police officer of "spew[ing] obscenities about the judge who sentenced his brother to federal prison ... tend[ed] to injure him in his profession as a law enforcement officer.").

The motion to dismiss should therefore be denied. Plaintiff respectfully requests oral argument. Thank you for your consideration of this matter.

                                      Very truly yours,

                                      *Mark E. Goidell*

                                      Mark E. Goidell

Encls.
cc:      All counsel (Via ECF) (w/o enclosures)